154   432
s 155   91
s 155  100
154   432
156   176
156   323
156   446
156   458
154   432
160   451
154   432
j172   ²280

JOHN F. BAXTER, Respondent, *v.* CHARLES E. McDONNELL, Appellant.

1. APPEAL — CERTIFIED QUESTION. While, on an appeal by certification, the Court of Appeals is confined to the question certified, it is its duty to ascertain all the facts that raise the question, so that it can be decided as an existing issue between the parties and the danger of passing upon merely abstract propositions avoided.

2. DEMURRER TO ANSWER — SUFFICIENCY OF COMPLAINT. The certified question whether the defense contained in the answer is insufficient in law upon the face thereof to constitute a defense, invokes the judgment of the Court of Appeals upon the law of the case as presented by the complaint and the answer, and requires an examination of the record to see whether the allegations of the complaint are sufficient to constitute a cause of action.

3. COMPLAINT IN TWO COUNTS — GENERAL DEMURRER TO DEFENSE. When the complaint contains two counts, and the defense demurred to is general, so that it applies to either, the demurrer must be examined upon the merits unless both counts are defective; but if neither count sets forth a cause of action, the sufficiency of the pleading demurred to cannot be considered.

4. ARGUMENT ON SUFFICIENCY OF COMPLAINT. Upon the certified question whether the defense contained in the answer is insufficient in law upon the face thereof to constitute a defense, the argument of counsel should include a discussion of the sufficiency of the complaint.

Reported below, 18 App. Div. 235, 629.

(Argued November 22, 1897; reargument ordered November 30, 1897.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 8, 1897, affirming an interlocutory judgment sustaining a demurrer interposed by the plaintiff to the defense set up in the answer.

The complaint contains two counts, which are preceded by certain general allegations doubtless intended to apply to both. These general allegations are, in substance, that the plaintiff, a priest of the Holy Roman Catholic Church, from September 10, 1885, until October 12, 1892, was pastor in charge of the parish of Babylon in the diocese of Brooklyn; that under the constitution, rules and ordinances of said church, all of

the real and personal property thereof is held in the name of the bishop, individually, as trustee therefor; that by virtue of his trust it is the duty and agreement of the bishop to hold himself liable, individually, for all contracts for work, labor, services and materials furnished to the church; that the priests are appointed to posts of duty by the bishop, "and under the agreement with the bishop aforesaid made with the church as aforesaid," are authorized to hold him liable, individually, for their salaries, and they, in turn, are liable to account to him for any property or money received while performing duties under their assignments; that according to the rules it is the duty of the bishop to provide by will for the devolution of all property held by him, as such, to his successor.

After these general allegations "for a first cause of action," the plaintiff alleged that on September 10, 1885, the bishop then in charge of the diocese assigned him to the pastorate of the parish of Babylon; "that pursuant to the agreement made by and between the bishop," under the rules of the church, the plaintiff was authorized during his pastorate to receive all moneys paid by parishioners and accruing from the property of the parish, to use the same to pay the indebtedness of the parish and provide it with what was necessary, and retain for himself $1,000 per annum as well as certain perquisites, and if the income of the parish was not enough to yield him a salary at that rate "the said bishop agreed to make up the difference himself;" that the bishop died December 30, 1891, leaving a will, since admitted to probate, whereby he gave to his successor all the property that he held for the church; that the defendant was installed as such successor in May, 1892, and shortly thereafter all the property so held in trust by his predecessor was transferred and handed over to him, and he accepted it "subject to the trusts and conditions upon which" the late bishop held the property, and upon such installation and acceptance he "did agree to pay . * * * all debts incurred" by his predecessor and to carry out and consummate all contracts entered into by him in behalf of the church; that between the 10th of September, 1885, and the

12th of October, 1892, the plaintiff received from many sources on account of said parish $25,741.50, and paid out on account thereof $24,173.24; that the salary earned by him during said period amounted to $7,166.66, " leaving a balance due and owing plaintiff on account of disbursements out of his said salary of $5,598.40, no part of which has been paid except the sum of $1,500 ; " that on the 30th of November, 1892, while in a weak condition of mind and body, he was over-awed by the influence and pressure of the defendant and his advisers and induced by false promises and coerced by fraud, covin and duress into signing a general release, under seal, discharging the defendant from any and all claims on the part of the plaintiff.

" For a second cause of action " the plaintiff alleged that on December 4, 1892, he was assigned to duty by the defendant as chaplain of St. Mary's Hospital, in Brooklyn ; that, since he has been acting as such chaplain, " he has received the sum of $300 a year, making the aggregate to date about the sum of $1,100 ; " " that, inasmuch as this plaintiff is a pastor, he should have received the sum of $1,000 a year " or $3,666.66 in all, and that the difference of $2,566.66 is due and owing him from the defendant " as payment for salary during his * * * incumbency as chaplain of said hospital as aforesaid."

Judgment is demanded against the defendant for the sum of $6,665.08, with interest on $4,198.40 from November 12, 1892, and on $2,566.66 from August 4, 1896, besides costs.

The defendant, by the first and second defenses set forth in his answer, admitted some allegations of the complaint and denied others. The third defense is as follows : "And, for a third separate and affirmative defense to the complaint of the plaintiff, this defendant alleges : That in an action in the Metropolitan Court of the archdiocese of New York, in which the plaintiff herein was plaintiff and this defendant was defendant, and in which all the matters of complaint alleged by the plaintiff in the complaint herein were alleged and set forth by said plaintiff in his action in said Metropolitan Court,

and in which all the issues that are herein joined were therein tried, a judgment was duly rendered on or about the 25th day of August, 1895, whereby it was adjudged that: I. The decision of the court on the first complaint is that the resignation of the Rev. John F. Baxter, plaintiff, was valid. II. The decision of the court in the matter of the release and settlement is that the release signed by the plaintiff relinquishing all claims for the sum of fifteen hundred dollars ($1,500), paid to him November 30, 1892, is binding on both parties to this suit, and must stand as valid. III. The court refuses to grant plaintiff's demand for a pastor's salary for the time he has served at St. Mary's Hospital. That the said Metropolitan Court of the archdiocese of New York is a court duly organized by the Holy Roman Catholic Church, and at the time said action was therein brought and tried, and said judgment was rendered, had jurisdiction of the parties to said action and of the subject-matter of said action, and that at the times said action was commenced, and continuously thereafter until the present, said plaintiff was, has been, and now is, a member of the Holy Roman Catholic Church, and subject to the rules, laws and discipline of said church, and subject to the jurisdiction and adjudication of said Metropolitan Court."

The plaintiff demurred to the third defense upon the ground "that the said third separate and affirmative defense of said answer does not set forth facts sufficient to constitute a legal defense."

The demurrer was sustained by the courts below and the defendant now comes to this court by permission of the Appellate Division.

*Henry C. M. Ingraham* and *Joseph E. Owens* for appellant.

*L. J. Morrison* for respondent.

VANN, J. The question certified by the learned Appellate Division to this court for determination is as follows: "Is the third separate and affirmative defense contained in the defend-

ant's answer herein insufficient in law upon the face thereof
to constitute a defense?"

We have recently held that it is not the duty of this court
to answer a question certified to·it that will admit of one
answer under one set of circumstances and a different answer
under another, or where it presents only an abstract proposi-
tion, no facts being disclosed by the record to show that it
arose in the case. (*Grannan* v. *Westchester Racing Associa-
tion*, 153 N. Y. 449.) While we are confined to the question
certified, it is our duty to examine the record not only to see
that it actually arose, but also to see how it arose, so that we
can decide it as it was presented to the courts below. In other
words, we should ascertain all the facts that raise the ques-
tion, so that it can be decided as an existing issue between the
parties and the danger of passing upon merely abstract propo-
sitions may thus be avoided. The question, therefore, is not
whether the facts alleged in the third division of the answer
are insufficient to constitute a defense to a complaint that is
admitted to set forth a good cause of action, but whether they
constitute a defense to the cause of action purporting to be
alleged in the complaint before us. The judgment of the
court is thus invoked upon the law of the case as presented
by the complaint and the third defense alleged in the answer.
(*Lewis* v. *Cook*, 150 N. Y. 163, 165.)

The rule is that on demurrer to an answer for insufficiency
the defendant may attack the complaint on the ground that it
does not state facts sufficient to constitute a cause of action.
(*People* v. *Booth*, 32 N. Y. 397; *Village of Little Falls* v.
*Cobb*, 80 Hun, 20, 27; 6 Encyc. of Pl. & Pr. 326.)

A demurrer searches the record for the first fault in plead-
ing and reaches back to condemn the first pleading that is
defective in substance, because he who does not so plead as to
invite an issue cannot compel his adversary to so plead as to
accept it. (*Clark* v. *Poor*, 73 Hun, 143; *Williams* v. *Wil-
liams*, 25 Abb. N. C. 217; *Corning* v. *Roosevelt*, Id. 220,
and cases cited in note.) As " a bad answer is good enough
for a bad complaint," it is necessary to examine the record to

1897.]   People ex rel. Brewing Co. *v*. Assessors.   437

N. Y. Rep.]                    Statement of case.

see whether the allegations of the complaint are sufficient to constitute a cause of action. The complaint contains two counts, and the defense in question is general so that it applies to either. Unless both counts are defective, the demurrer must be examined upon the merits, but if neither sets forth a cause of action, the sufficiency of the pleading demurred to cannot be considered. ( *Wheeler* v. *Conn. Mut. Life Ins. Co.*, 82 N. Y. 543, 555 ; *Boyle* v. *City of Brooklyn*, 71 N. Y. 1.)

The Special Term assumed without discussion that the complaint states two causes of action, while the Appellate Division held that the first count was sufficient, but that the second was insufficient.

Upon the argument before us the sufficiency of the complaint was not discussed, doubtless upon the assumption that it was not involved in the question certified. In order to avoid the danger of doing injustice, we think that a reargument should be had, so that counsel may present their views upon that subject, and it is ordered accordingly.

GRAY, O'BRIEN, BARTLETT and MARTIN, JJ., concur ; ANDREWS, Ch. J., and HAIGHT, J., not voting.

Reargument ordered.